## KUKIELKA *v.* RANYAK.

EXCHANGE OF PROPERTY—FRAUD—CANCELLATION OF INSTRUMENTS.
In a suit to set aside an exchange of a farm and personal property for a store building and a stock of hardware, on the ground of fraud, the finding of the court below that plaintiffs had no ground for complaint in regard to the exchange of equities in the real estate, but that they had been overreached and deceived as to the value of the hardware stock, and awarding them a decree for $6,000 to be credited on their contract, *held,* justified by the record.[1]

Cross-appeals from Wayne; Shepherd (Frank), J., presiding. Submitted April 18, 1924. (Docket No. 98.) Decided December 10, 1924.

Bill by Joseph Kukielka and another against John Ranyak and others to set aside an exchange of property on the ground of fraud. From the decree rendered, all parties appeal. Affirmed.

[1]Exchange of Property, 23 C. J. § 95.

*John W. L. Hicks* (*Charles C. Stewart,* of counsel), for plaintiffs.

*Harry J. Lippman* (*Ralph W. Liddy* and *Ernest W. Ver Wiebe,* of counsel), for defendants.

STEERE, J.    In September, 1921, John Kukielka and Leokadya Kukielka, his wife, were in possession as owners under a land contract of a farm consisting of 195 acres lying in Orion township near Clarkston, in Oakland county, Michigan.    They had obtained it from one John Harger, of Pontiac, at a stated price of $29,750 and been credited with $14,000 on the purchase price, in consideration for which they "turned over" to Harger a two-family brick house and lot located in Detroit, on "Center Line just a block off Hartford (Harper)," valued at $20,000, upon which they were yet owing $6,000.    Kukielka had followed the bricklayer's trade all his life, 15 years in Detroit, and neither he nor his wife had ever lived on a farm before May 2, 1921, when they moved upon the one involved here shortly after securing it from Harger. They at first were apparently satisfied with the place but later were disposed to dispose of it.    Plaintiff Leokadya said that she at first liked the farm but later found she couldn't work on it and wanted to sell it, one of her reasons being "I had a lot of children to take care of; I couldn't take care of them on the farm."

On September 8, 1921, three real estate men named Thomas Olzynski, Walter Tybicki and Stanley Lukoski visited the farm and interviewed Kukielka relative to his inclination to trade for property in Detroit, which resulted in their bringing him and defendant John Ranyak together on a proposition that plaintiffs trade their interest in the farm for a hardware store and stock of hardware in Detroit belonging to Ranyak, located at 8435 Mt. Elliott street.    Plaintiffs were

taken by the real estate men to see the Detroit property and Ranyak to see the farm. Their negotiations resulted in a deal by which plaintiffs assigned to Ranyak their interest in the farm, stock and implements upon it, as a first payment of $12,250 on a land contract from Ranyak and wife, dated September 9, 1921, of their Detroit property for $34,000, the real estate being valued at $26,000 and the stock of hardware in the store at $8,000. Deferred payments were provided for, to be completed within ten years. Possession of the properties was shortly thereafter exchanged and plaintiffs moved into apartments over the store, where they were yet residing at the time this case was heard. They at first tried unsuccessfully to continue the hardware business in which neither of them had any previous experience.

Plaintiffs claim to have soon discovered that they had been grossly deceived, and induced to make the deal by false and fraudulent representations of defendants both as to the value of the Detroit real estate, and amount and value of the stock of hardware in the store which proved to be less in quantity than represented and worth scarcely a quarter of the $8,000 claimed. They thereafter declared a rescission of the deal, tendered back to Ranyak and wife assignment of their contract for the Detroit property and demanded reassignment to them of their equity in the farm, which was ignored. They then filed this bill asking cancellation of the exchange, restoration of possession, return of personal property and award for damages sustained, on the ground that they were induced to make the exchange by false and fraudulent representations of defendants Ranyak and their agents. A money judgment was also asked for compensatory damages, in case the Ranyaks had disposed of the farm to innocent third parties.

Defendants answered issuably in denial and after hearing the testimony of the respective parties the

court declined to cancel the instruments conveying equities in the real estate exchanged in the transaction; but found plaintiffs had been overreached and grossly deceived by defendants' false and fraudulent representations as to the amount and value of the stock of hardware, a subject in relation to which they were totally inexperienced and ignorant, assessed their damages at $6,000, and ordered that amount credited as a payment upon their contract for the Detroit property as of the date of the contract. From this decree plaintiffs have appealed.

The case is strictly one of facts, the issue being whether plaintiffs were induced to enter into the contract by false and fraudulent representations made by defendants upon which the former relied and acted, as to which they had the burden of proof. The parties were dealing at arms' length. Plaintiffs had lived in Detroit for years and owned real estate there. They had an opportunity to and did inspect the property involved here. They were dealing with fellow-country-men and cannot take refuge behind the not uncommon claim in this class of cases that they did not fully understand what was said in the negotiations. So far as the real estate is concerned they are not shown to have been on unequal footing with those with whom they dealt. The testimony of the respective sides as to what passed between them is in violent conflict. Conflict of testimony as to values of real estate and representations in that particular is minified in significance by the fact that this was strictly a trading transaction with trading prices asked and talked from beginning to end. Plaintiffs procured the farm in a trade and traded it to Ranyak who claimed to have been deceived by them as to its value. He testified that when he "got everything looked up" he found the buildings in bad shape, the roads to the place bad, no supply of food for stock which were half starved, the land "rolly and you could

not raise no crops," and the "farm worthless." He then knew he was "stung," but managed to trade it to a woman for an incumbered house and two lots in Detroit, which "was another trade, there was no cash." This made three trades through which the farm was passed along in a little over three months, the only money shown to have been paid in any of those transactions being a commission to the real estate men paid by plaintiffs which Mrs. Kukielka testified Ranyak agreed to pay, but she had to do so because they would not give them the contract without it. The trial court in passing upon the conflicting testimony had the benefit of hearing and seeing the witnesses and on their testimony as it appears in print we find no occasion to disturb the conclusion there reached that plaintiffs had not satisfactorily established their claim of fraud as to the real estate by a preponderance of convincing evidence.

As to the amount and value of the stock of hardware and business Ranyak was doing in that line, it clearly appears that plaintiffs were totally ignorant upon the subject and the situation was such that defendants could more readily deceive them. There is convincing evidence that they did. Records left in the store of goods purchased, business done, an inventory of the stock turned over and other circumstances disclosed strongly support plaintiffs' testimony in that particular and well sustain the court's conclusion that the stock turned over to them was worth little if any more than $2,000, while defendants fraudulently and falsely represented to them and led them to believe that they were getting a live stock of merchandise worth $8,000, in connection with a prosperous hardware business.

The decree will stand affirmed, with costs of this court to defendants.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.